# CASES IN CHANCERY.

THE HAMBURGH MANUFACTURING COMPANY and others *v.* Jos.
E. EDSALL, ELIAS L'HOMMEDIEU and others.

It had been determined that, by an agreement between creditors of an incorporated
manufacturing company and the company, a manufacturing establishment was held
by A., in trust, first, for the payment of the creditors, and then for the company.
The property was occupied by B., in its appropriate use, in connection with, or with
the consent of A.; and an order had been made in a cause in which the company
was complainant, and A. and B. were defendants, directing both A. and B. to ac-
count for the rents and profits, for the purpose of ascertaining whether they had
not amounted to sufficient to pay the debts; and the account had not yet been ta-
ken. B.'s ability to respond was admitted; and the property was of a nature to be
injured if not used. In this state of things, the company applied for a receiver to
take charge of the property. The motion was denied.

A denial that property is held in trust does not make the appointment of a receiver
necessary on the establishment of a trust.

Where there is no ground for apprehension of loss by permitting the property to re-
main, in its appropriate use, in the occupancy of him who has the use of it, and his
ability to respond for its use is admitted, and he is one of the persons who have
been ordered, in the cause, to account before a Master for the rents and profits that
may have been received, a receiver will not be appointed to take charge of the
property.

The decision of the main points in this case by the Court of
Chancery is reported ante, vol. 1, p. 249; and the decision by
the Court of Errors and Appeals is reported ante, vol. 1, p. 658.
The last mentioned decision was made in July, 1848.

A motion was made on the 3d of November, 1848, in behalf of
the Hamburgh Company or some person or persons interested in
that company as stockholders, for the appointment of a receiver;

the bill having prayed for a receiver, and the court having not yet appointed one.

*B. Williamson* and *W. Pennington* in support of the motion.

*D. Haines, R. Hamilton* and *S. G. Potts*, contra.    They cited 1 *Green's Ch.* 179 ; 10 *Law Lib.* 106 ; 2 *Story's Eq. Jur.*, sec. 834 ; *Edw. on Receivers*, 20, 21.

THE CHANCELLOR.    By an article of agreement made by some of the creditors of the Hamburgh Manufacturing Company, among them, they covenanted and agreed with each other to unite with each other in the purchase of the property of the Hamburgh Company, then advertised to be sold at Sheriff's sale, and also of the mine farm of the Clinton Manufacturing Company, then also advertised to be sold at Sheriff's sale ; (having recited in the said agreement that they were in danger of losing their claims against the Hamburgh Company if the Hamburgh property sold for less than $17,000 ;) and constituted L'Hommedieu, who was one of the said agreeing creditors of the Hamburgh Manufacturing Company, their agent and trustee to purchase the said properties for their use ; and authorized their said trustee to raise, by bond and mortgage on the property, sufficient money, &c. ; and authorized and directed the said trustee to lease the said premises, and to agree with the lessee, if he desires it, to sell to him the said premises upon his securing to the said trustee the cost of the premises, including their respective claims, with interest ; and to make a deed of release to him in full.    The sales were made, and the Sheriff gave absolute deeds to L'Hommedieu.

Upon the testimony in the cause, the Court of Chancery held, that it appeared that Edward W. Pratt, who had been a large stockholder in both these separate Companies, but who had taken the benefit of the insolvent law, and had, in pursuance of the provisions of that law, made an assignment of all his estate to his assignees in insolvency, was, by a side agreement between the said agreeing creditors of the Hamburgh Company and himself, to be the lessee under the said agreement, and the person to

whom both properties were to be conveyed by the said trustee, on his paying the claims of the said agreeing Hamburgh creditors ; and that, by reason of means used, in connection with this agreement, which prevented competition and produced a sacrifice of the property of both companies, the sales were void ; and that, consequently, as respected the Hamburgh property, a trust resulted in favor of the Hamburgh Company and its creditors generally ; and that, as respected the property of the Clinton Company, it remained the property of the Clinton Company, and a trust resulted in their favor ; but that, as the Clinton Company was not before the court, nothing could be done in this suit in the way of relief to them or their creditors.

On appeal from the decree, the Court of Errors and Appeals decided, that the Sheriff's deeds, for both properties, to L'Hommedieu were good ; but "that the facts and circumstances led irresistibly to the conclusion, that the sales were not considered by the parties as absolute and beyond redemption ; but that Pratt, either for himself or the Company, had a reversionary right ;" and in this view of the case sustained the decree for an account as to the Hamburgh Company's property ; which was a decree against L'Hommedieu, who took the deeds, and Edsall, who was one of the said agreeing creditors of the Hamburgh Company, and who had gone into possession of the property under, or in connection with, or with the consent of L'Hommedieu—he, Edsall, also holding a mortgage on a part of the property. And as to the property of the Clinton Manufacturing Company, the Court of Errors and Appeals decided, that L'Hommedieu held that in trust for the same persons for whom he held the Hamburgh Company's property. I might remark here, that it is manifest that the sale of the property of the Clinton Company was intended, by the said agreement among a portion of the creditors of the Hamburgh Company, to be absolute, and to divest all the title of the Clinton Company, and vest it in L'Hommedieu in trust for the said agreeing creditors of the Hamburgh Company. And it might be further remarked that, if the deed to L'Hommedieu for the property of the Clinton Company be valid, it is difficult to perceive how the Hamburgh Company can have any reversionary interest in the property of the Clinton Company, or

any interest at all in it. If the deed to L'Hommedieu for the property of the Clinton Company be good, it would seem that he would hold this property either absolutely, according to the purport of the deed to him, or, if in trust, in trust for the persons for whom he agreed to hold it in trust, that is to say, that portion of the creditors of the Hamburgh Company who entered into the said agreement; and not for the Hamburgh Company, the complainants in the case.

As to both properties it was clear to my mind that the very object of Pratt and the agreeing creditors of the Hamburgh Company, in the arrangement they made, was that the sales of both properties should be absolute as against both Companies; and that the Clinton property should go into the hands of L'Hommedieu to aid in paying the claims of these agreeing creditors of the Hamburgh Company, which they despaired of getting out of the Hamburgh property; and then, on Pratt's paying the amount of those claims, he, individually, and not the Hamburgh Company, was to have both properties, free from all debts except the mortgages. This was the very arrangement which put an end to all competition and caused the sacrifice of both properties.

It was clear to my mind, that if the deeds were valid, the defendants were right in saying, that L'Hommedieu was not a trustee for the Hamburgh Company, but was a trustee for them, the said agreeing creditors of the Hamburgh Company. And, in this view, the only ground on which any other trust could be reached was by declaring the deeds void; thus reaching a resulting trust in favor of the Hamburgh Company in reference to the Hamburgh property. But a trust could not result to the Hamburgh Company in the Clinton property by the setting aside of the deed to L'Hommedieu for that property. Whether that deed be good or bad, there can be no trust in L'Hommedieu of the Clinton property in favor of the Hamburgh Company.

If the case stood now as it did when it passed from my hands before, there would be a ground for the appointment of a Receiver arising from the constructive fraud by which the property got into the hands of L'Hommedieu. But by the view taken of the case by the Court of Errors and Appeals that ground is taken away. The deeds have been declared by that Court to be

good; and L'Hommedieu is declared to be a trustee of both properties, first, for the said agreeing creditors of the Hamburgh Company, or, it may be, for all the creditors of the Hamburgh Company, the language of the deed does not certainly indicate which, and, after the debts of those creditors shall be paid them, for the Hamburgh Company. And, on the case being remitted to this court, an order was made directing an account, in order to ascertain whether the rents and profits have been sufficient to pay those debts, and how much, if any, of the rents and profits has been applied for that purpose; and this matter of account is now in the hands of a Master. What will be the result of the account is entirely uncertain; the said creditors have not yet been paid. In this state of things, the Hamburgh Company ask, that the property may be taken out of the hands of the trustee so agreed upon, and put into the hands of a Receiver, against the consent of the said creditors by whom, with Pratt's consent, the said trustee was appointed; the said creditors preferring that the said trustee be continued in the trust. The works on the property (iron works,) are now in operation, conducted by Edsall, a man experienced in the business, and of unquestioned responsibility, and who, also, has been directed to account before the Master. And all agree, that to stop the works and permit them to stand unemployed would be ruinous to them. And a Receiver is not asked for the purpose of selling the property.

The principal ground on which the appointment of a Receiver was pressed was, that L'Hommedieu and Edsall denied the trust. It is true they denied any trust in favor of the Hamburgh Company; and, if the deeds be valid, it is difficult, as I have before said, to perceive how there can be a trust in favor of the Hamburgh Company as to either of the properties, and much more difficult to see how there can be a trust in favor of the Hamburgh Company as to the property of the Clinton Company; but they admitted the trust created by the words of the said agreement among the said agreeing creditors.

But a denial of a trust would not, of itself, make the appointment of a Receiver necessary on the establishment of the trust. Where there is no ground for apprehension of loss by permitting the property to remain, in its appropriate use, in the occupancy

of him who has the use of it, and his ability to respond for its use is admitted, and he is one of the persons who have been ordered in the cause to account before a Master for the rents and profits that may have been received, I see no good end to be attained by the appointment of a Receiver for the purpose of taking charge of the property.

The motion cannot prevail.

Motion denied.